1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NOE VILLARREAL,

11          Petitioner,                    No. CIV S-05-0998 LKK GGH P

12       vs.

13   THOMAS L. CAREY, et al.,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges two separate 2002 prison disciplinary

19   convictions for possession of contraband and possession of inmate manufactured alcohol.

20   Petitioner alleges that insufficient evidence supported his conviction for possession of

21   contraband.  With respect to his conviction for possession of alcohol, petitioner alleges that

22   prison officials failed to do a field test of the liquid found in his cell.  After carefully reviewing

23   the record, the court recommends that the petition be denied.

24   II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

25          The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

26   petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

1   138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997).  The AEDPA "worked

2   substantial changes to the law of habeas corpus," establishing more deferential standards of

3   review to be used by a federal habeas court in assessing a state court's adjudication of a criminal

4   defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

5   1997).

6           In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

7   Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

8   for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

9   between "contrary to" clearly established law as enunciated by the Supreme Court, and an

10  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

11  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

12  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

13  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

14          "Unreasonable application" of established law, on the other hand, applies to

15  mixed questions of law and fact, that is, the application of law to fact where there are no factually

16  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

17  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

18  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

19  deference is not blindly automatic, "the most important point is that an *unreasonable* application

20  of federal law is different from an incorrect application of law....[A] federal habeas court may not

21  issue the writ simply because that court concludes in its independent judgment that the relevant

22  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

23  that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

24  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

25  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

26  authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

1    The state courts need not have cited to federal authority, or even have indicated

2  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

3  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

4  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

5  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

6  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

7  established Supreme Court authority reviewed must be a pronouncement on constitutional

8  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

9  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

10    However, where the state courts have not addressed the constitutional issue in

11  dispute in any reasoned opinion, the federal court will independently review the record in

12  adjudication of that issue.  "Independent review of the record is not de novo review of the

13  constitutional issue, but rather, the only method by which we can determine whether a silent state

14  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

15  2003).

16    In reviewing a state court's summary denial of a habeas petition, this court must

17  "look through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard,

18  234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

19    The Superior Court issued a reasoned decision denying petitioner's habeas corpus

20  petition.  Answer, Exhibit D.  This opinion addressed petitioner's constitutional claims.  Id.  The

21  California Supreme Court issued an unexplained decision denying petitioner's habeas corpus

22  petition.  Answer, Exhibit C.  Accordingly, this court looks through the unexplained order of the

23  California Supreme Court to determine whether the denial of petitioner's habeas corpus petition

24  by the Superior Court was an unreasonable application of clearly established Supreme Court

25  authority.

26  /////

1    III.   Discussion

2           The court will first address petitioner's claim challenging his conviction for

3    possession of contraband (a lightbulb).  The Rules Violation Report describes petitioner's

4    offense as follows:

5           On February 16, 2002, at approximately 1045 hours, while working Position
             R0224, Unit # 1 Third Tier Officer, I conducted a random cell search of 1/C3-21,
6            which is jointly occupied by Inmate VILLARREAL, H69045 and LOPEZ,
             P82319, when I found hidden in the wall locker unit a 10" by 1/4" glass hagon
7            light bulb which was inside a inmate manufactured paper sleeve taped to the
             inside left crevice of the wall locker unit so as not to be seen from the front.  This
8            glass is tempered and strong enough to be used as a stabbing instrument.  The
             dangerous contraband was in an area of the cell that is accessible by both inmates.
9            The dangerous contraband was turned over to the Unit Sergeant, Sergeant Ramos.
             Inmate VILLAREAL is not a participant in the Mental Health Program at the
10           CCMS or COP level of care.  Inmate VILLAREAL is aware of this report.

11   Answer, Exhibit B.

12          At the disciplinary hearing petitioner testified, "I did not see this and have not

13   seen the light bulb that they are talking about."  Answer, Exhibit B.

14          Petitioner had been charged with possession of dangerous contraband in violation

15   of Cal. Code Regs. tit. 15, § 3006(a).  The hearing officer found petitioner guilty of the lesser

16   offense of possession of contraband in violation of § 3006(c)(3) and assessed 30 days time

17   credits based on the following evidence:

18          1. The contents of the written report by Officer S.J. Novikoff which clearly
             supports the finding that Inmate VILLAREAL violated the amended charge of
19           CCR # 3006 CONTRABAND.
             2. The glass hagon lightbulb is considered contraband.  However, it does not
20           constitute dangerous contraband.
             3. The contraband was found concealed in a crevice of the wall locker unit.
21

22   Answer, Exhibit B.

23          Due process requires that there be "some evidence" supporting a prison

24   disciplinary proceeding that deprives a prisoner of good time credits.  Superintendent v. Hill, 472

25   U.S. 445, 455 (1985).  This standard "does not require examination of the entire record,

26   independent assessment of the credibility of witnesses, or weighing of the evidence," but instead

                                                4

1    asks "whether there is any evidence in the record that could support" the challenged finding.  Id.

2          Petitioner argues that the guilty finding was not well supported because the

3    lightbulb was not broken or sharp, suggesting that it could not have been used as a weapon.

4    Petitioner states that the lightbulb was, at most, excess property.  As indicated above, petitioner

5    was not found guilty of possession of dangerous contraband.  Rather, he was found guilty of

6    possession of contraband, which is defined as "anything which is not permitted, in excess of the

7    maximum quantity permitted, or received or obtained from an unauthorized source." Cal. Code

8    Regs. tit. 15, § 3000.  The lightbulb was contraband because it was, as conceded by petitioner,

9    excess property.

10          Petitioner next argues that there was insufficient evidence to support his

11    conviction because no evidence was presented demonstrating how he obtained the lightbulb.  The

12    fact that the lightbulb was found in his cell was some evidence that petitioner possessed the

13    lightbulb.  Prison officials were not required to present evidence demonstrating how petitioner

14    obtained the lightbulb.

15          For the reasons discussed above, the court finds that there was some evidence to

16    support petitioner's conviction for possession of contraband.

17          Petitioner next challenges his conviction for possession of inmate manufactured

18    alcohol in violation of Cal. Code Regs. tit. 15, § 3016, on grounds that prison officials did not

19    field test the liquid found in his cell.  The Rules Violation Report describes petitioner's offense

20    as follows:

21

22         On February 16, 2002, at approximately 1045 hours, while working position
      R0224, Unit # 1 Third Tier Officer, I conducted a cell search of cell 1/C3-21,
23    which is jointly occupied by inmate VILLAREAL, H69045 and LOPEZ, P82319,
      when I found in a card board box under the bottom bunk in a common area with
24    easy access to both inmates, a twelve ounce Folgers plastic container containing
      inmate manufactured alcohol.  The alcohol was strained and in the completed
25    stages of fermentation, giving off a very strong odor of alcohol.  The alcohol was
      verified by Unit Sergeant Ramos and I disposed of it by pouring the alcohol down
      the Unit toilet and flushing it.  The alcohol was made from citrus as the fruit pulp
26    could be seen floating in the jar.  Inmate VILLAREAL is not a participant in the

1   Mental Health Program at the CCMS or EOP level of care.  Inmate VILLAREAL
2   is aware of this report.

3   Answer, Exhibit B.

4   At the disciplinary hearing, petitioner testified that, "When they brought the juice

5   to me I was trying to find out who sent it to me.  When I came out I used the excuse to use the

6   iron so that I could come out to find out who sent the juice to me.  At 8:00 a.m., as I came out,

7   the officer went in and searched my cell and it appeared like it was set-up."  Answer, Exhibit B.

8   At the hearing, Inmate Boles was asked one question on petitioner's behalf:

9   Question: Do you know if someone brought the wine to me?

10   Answer: I know that people have dropped stuff off in that area and it was not mine
    or his.

11

12   Answer, Exhibit B.

13   Petitioner was found guilty and assessed 120 days of time credits based on the

14   following evidence:

15   1. The contents of the written report by Officer S.J. Novikoff which clearly
     supports the finding that Inmate VILLAREAL violated CCR # 3016 INMATE
16   MANUFACTURED ALCOHOL.
     2. Inmate VILLAREAL plead not guilty.  However, in his statement he admitted
17   to possession of the inmate-manufactured alcohol.

18   Answer, Exhibit B.

19   Cal. Code Regs. tit. 15, § 3290(a) requires that controlled substances be "field

20   tested."  The definition of "controlled substance" in the regulations does not include alcohol.

21   Cal. Code Regs. tit. 15, § 3000.  Therefore, petitioner's argument that the liquid found in his cell

22   should have been field tested is without merit.

23   In any event, "some evidence" supported the guilty finding.  The reporting

24   officer's statement in the disciplinary report that the alcohol was strained and in the completed

25   stages of fermentation, giving off a very strong odor of alcohol was some evidence that the liquid

26   \\\\\

1  was alcohol.  Petitioner did not dispute that the liquid was alcohol.  Accordingly, petitioner's

2  challenge to this disciplinary hearing is without merit.

3             For the reasons discussed above, the court finds that the Superior Court's denial of

4  these claims was not an unreasonable application of clearly established Supreme Court authority.

5  Accordingly, petitioner's application for a petition for writ of habeas corpus should be denied.

6             Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

7  a writ of habeas corpus be denied.

8             These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10 days after being served with these findings and recommendations, any party may file written

11 objections with the court and serve a copy on all parties.  Such a document should be captioned

12 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13 shall be served and filed within ten days after service of the objections.  The parties are advised

14 that failure to file objections within the specified time may waive the right to appeal the District

15 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 DATED:   2/13/06

17

18

19                                        /s/ Gregory G. Hollows

20                                        _____
                                          GREGORY G. HOLLOWS
                                          UNITED STATES MAGISTRATE JUDGE

21

22

23 ggh:kj
   vill998.157

24

25

26

7